MARY G. CLARKE, EXT'X, *v.* AGNES A. GOODRUM.

1. CONCEALED FRAUD.   *Will.   Executor de son tort.*
   A party to whom a will and a note due by himself are intrusted by the testa-
   tator, whose sole property was the note, by the concealment of the will and
   retention of the note after the death of the testator, becomes an executor *de
   son tort,* and liable to be proceeded against by the legatees under the will.

2. SAME.   *Trustee.*
   By accepting the custody of a will, the custodian becomes trustee in an express
   trust as to it; by dealing with the estate, he becomes trustee as to it by con-
   struction.

3. SAME.   *Probate of claim.   Statute of limitations suspended.*
   When the existence of a cause of action is not discovered until after the
   death of the party concealing the same, and the parties whose cause of
   action has been concealed probate their claims within one year after notice
   to creditors, the operation of the statute of limitations is suspended.

4. SAME.   *Legatees.   Distributees.   Statute of limitations set up by executor de
   son tort.*
   Where parties claim as legatees under a will and not as distributees of an
   intestate, the right of the legatees is not barred because of the fact that but

for the will they would have taken as distributees and as such be barred by limitations. And not setting up any claim as distributees themselves, it cannot be set up for them by an executor *de son tort* for the purpose of defeating an action which they still have a right to assert.

APPEAL from the Chancery Court of Claiborne County.

HON. L. McLAURIN, Chancellor.

On the 3d day of July, 1883, the appellees filed their bill in the chancery court, praying a personal decree against Mary G. Clarke, appellant, executrix of the last will of Charles B. Clarke, deceased, for half of the proceeds of a certain promissory note described in the will, upon the following state of case: In the year 1859 Charles B. Clarke, now deceased, gave his promissory note to Gibson Clarke for three thousand dollars, bearing ten per cent. interest, due January 1, 1861. In the spring of 1861 Gibson Clarke, being about to enlist in the army, made his will, whereby he left the note, which, the will recites, was his sole property, to be divided equally between his sister, Laura Boyce, mother of the appellees, and Charles B. Clarke, the maker of the note. He appointed no executor, but before departing for the war he placed the note and the will in the custody of Charles B. Clarke, with instructions, in case of his death, for the division of the proceeds of the note as the will directed. Gibson Clarke was unmarried and died in 1862, never having returned from the war. Both Laura Boyce and her husband, James Boyce, died intestate, owing no debts, the one in 1862, the other in 1866. Gibson Clarke left no debts. At the time the note and will were executed the appellees were of tender age, one having been born in 1851, the other in 1857, and knew nothing whatever of the existence of either the note or the will until seven months before the will was filed. Shortly after their father's death, however, they inquired of Charles B. Clarke if their uncle, Gibson Clarke, had left any property, and were informed by him that Gibson Clarke left nothing whatever except some negroes, who had been emancipated.

They charge in their bill that Charles B. Clarke, taking advantage of their ignorance and tender age, had fraudulently concealed the will and the note from them, and had destroyed the same for

the purpose of depriving them of their rights; that they had made repeated but fruitless efforts to ascertain whether their uncle, Gibson Clarke, had left any property until seven months before the filing of their bill, when they, for the first time, discovered certain facts which led to the discovery of the facts above set forth, and that they at once probated their claims against Charles B. Clarke's estate. Charles B. Clarke died testate in 1882, making his wife, Mary B. Clarke, appellant, his executrix. The above facts were discovered after the death of Charles B. Clarke.

The case was tried in the court below on bill, answer, and proof, and a decree rendered for the complainants for four thousand four hundred and fifty dollars. The defendants, in their answer, denied the concealment of the cause of action and pleaded the statutes of limitation.

*J. D. Vertner,* for the appellant.

1. It appears that Mrs. Sims, one of the witnesses to the will, wrote to appellees in the latter part of 1875 of the will and note of Gibson Clarke, left in the hands of C. B. Clarke. "Discovery or knowledge is notice." 9 Am. L. Reg. 705. Whatever is sufficient to excite attention or put one on inquiry is notice of everything to which such attention or inquiry might lead, and the date of Mrs. Sims' letter became the discovery date, if there ever was a concealment. 33 Miss. 454; 24 Miss. 228; 43 Miss. 266.

2. The burden as to the true date of discovery is upon the complainants, and where their own testimony is that the Sims' letter was received by Mr. Goodrum in the latter part of 1875 *or* 1876, such testimony will be taken against the party in whose interest such witness is called, and will be treated as fixing the date most favorable to the opposite party. As to the burden of this date being on complainants, see *Carr* v. *Hilton,* 1 Curtis 390; *Stearns* v. *Paige,* 7 How. (U. S.) 829; *Moore* v. *Greene,* 2 Curtis C. C. 205–206; *Martin* v. *Smith,* 9 Am. L. Reg. 703.

3. It is in vain that appellants say that C. B. Clarke, by his letter of denial, lulled suspicion, and that they reposed confidence in him. This cannot excuse laches. See 24 Miss. 228 and 33 Miss. 454. The authorities to this point are numerous. The case of

*Calcote* v. *Bucker*, 28 Miss., relied on by appellees as announcing a will which excuses their want of diligence, by virtue of his denial, or the relationship in which he stood to them, cannot be so construed. So that the confidence of complainants in the old gentleman living, whose estate and character they now so ruthlessly assail after his death, cannot excuse their fraudulent laches.

4. Nor will the paraded poverty of complainants avail them as excuse for want of diligence. Perry, in his work on Trusts, says, "Want of evidence, poverty, etc., will not excuse laches." See Perry on Trusts 204, at foot, single vol.; see also, p. 596, 28 Miss.

5. The age of C. B. Clarke, the magnitude of this debt, and the "efflux of time past should have quickened diligence." See Angell on Lim. 202.

6. Appellees argue that as this statute provides that in case of concealment of the cause of action, such action "*shall be deemed* to have accrued *first at the time of discovery.*" This has the same effect as though the note were, on its face, drawn payable in 1875 (time of discovery by Sims' letter). If this were actually instead of constructively so there is no question but that any disability existing at that date would then be within the saving, for the reason that the statute had never begun to run. And in the case supposed the disabilities could be pleaded without the necessity to aver concealment. But as opposed to the actual date, when cause of action first accrued on said promissory note, according to which the same would be barred, the statute fixes a *constructive* date, *viz.:* that of discovery, as the point of time from which the statute shall begin to run for the period limited in such cases. It is merely the giving of further time. It may be observed here, that in case of a concealment from a party originally entitled (that is, before the currency of the statute had begun) that the actual and constructive date of accrual are one and the same, and in such case any disabilities at accrual would be saved. One proposition is settled beyond controversy and forever by the universal interpretation of the *salvo* clause, and that is, that no matter how much longer time may be given in case of fraud, that clause (under which alone disabilities are saved) excludes its application to any case where the statute had once begun to run. The

equity practice and doctrine merely restored the *status quo* of the parties on discovery.

*W. P. & J. B. Harris,* on the same side. ·

*W. P. Harris* made an oral argument.

*Thos. J. Berry & Stephen Thrasher,* for the appellees.

The only question to be considered is the bar of the statute of limitations interposed by the defendant, and whether or not the fraud practiced by Charles B. Clarke on these complainants and his fraudulent concealment from them of the cause of action and his positive and particular and distinctive acts of fraud in so doing are sufficient to prevent the bar of the statute. The law in cases of this kind is well settled, and all that was necessary for the Chancellor in the court below was to settle the facts as shown by the testimony. The proofs were duly considered by him and the court there determined that the appellees were entitled to relief, and accordingly granted them a decree against the appellant as executrix, etc. And it is this action of the court below, in passing upon and determining the facts in this case, that this court is now called upon to review, revise, and correct. We apprehend that it must be a very extreme case where this court will set aside the finding of the facts as found by the Chancellor in the court below. The tender years of the complainants, and their ignorance of the existence of this promissory note and the will of their uncle Gibson Clarke at the time of his death, and the death of their father and mother, as alleged in the bill of complaint (see Record, page 7, line 19, etc., and page 9, line 23 *et seq.*), are all admitted by the answer, for the answer nowhere denies these allegations in the bill. The tender years is also shown by Mrs. Clarke in her own testimony. Now, the fact that this will was left by Gibson Clarke in the care and custody of his uncle, Charles B. Clarke, which is admitted by the answer, and the fact that he kept it concealed from the knowledge of complainants, who did not even know of its existence or the existence of the note that it disposed of, or, in other words, that he suppressed the will of Gibson Clarke after his death in 1862, and did not bring it forward for probate, is a crime to which the penalty of grand larceny is attached. (See Code of 1857, p. 434, art. 47,

and the same provisions in the subsequent codes.)   The answer admits that this will was found by appellant among her husband's papers after his death.   She says herself in her testimony that she did not bring it forward into court until after the institution of this suit.   This is a pregnant fact of fraudulent concealment by Charles B. Clarke as charged in the bill, as well as a crime on his part.   It is a cardinal principle of law that no man will be allowed to take advantage of his own wrongs, and can the appellant in this case screen or shield the estate of Charles B. Clarke from the consequences of this fraudulent concealment and suppression of the will and of his crime ?  for most certainly if he had put the will on record in the probate office, or subsequently in the chancery clerk's office, which the law required him to do and which it was his duty to do as an honest man, the matters now in controversy would have long since been settled and before the bar of the statute of limitations could have been invoked on behalf of the defense.  The statute of limitations was suspended January 29, 1862, and did not commence running again till April 2, 1867.   See *Guffing* v. *Mills,* 40 Miss. 611.   And can the appellant now invoke the aid of the statute of limitations after the fraudulent suppression of the will by her testator ?   I repeat that it was the duty of Charles B. Clarke, in whose care and custody Gibson Clarke had left the will, to have probated it at once after Gibson's death, or as soon as he could do so, and to have taken out letters " *cum testamento annexo,*" and to have probated his claims against the estate (if he had any, as defendant claims in her answer that her testator had paid Gibson more than the note called for) and then settled up the estate by final account after citing in the heirs of Gibson Clarke, but instead of this he conceals and suppresses the will and defrauds the heirs.  Citing *Auding* v. *Davis,* 38 Miss. 574; *Buckner* v. *Colcote,* 28 Miss. 432; *Livermore* v. *Johnson,* 27 Miss. 284 ; *Edwards* v. *Gibbs,* 39 Miss. 166 ; *Matthews* v. *Southmier,* 39 Miss. 174; *Wood* v. *Ford,* 29 Miss. 57.

*Stephen Thrasher* also argued the case orally.

COOPER, J., delivered the opinion of the court.

By the concealment of the will of Gibson Clarke, and the reten-

tion of the note due by himself to the testator until all action thereon was barred by limitation, Charles B. Clarke became executor *de son tort* and liable to be proceeded against as such by the legatees under the will of Gibson Clarke. The whole estate of the testator consisted of a note due to him by Charles B., and both the note and will were left in his custody and care by the testator when he left home to enlist in the Confederate Army. Upon the death of the testator it became the duty of Charles B. to produce the will that probate thereof might be made in the probate court. This he failed to do, and so dealt with the will and the estate as to keep the legatees in ignorance of the existence of the will and to convert to his own use the whole of the estate. It is but just, therefore, that he should be treated as an executor, and as such charged with the amount of note due by him to the estate as he would have been charged if he had probated the will and then taken letters of administration thereof from the proper court.

Occupying this relation to the appellees, it was his duty to disclose to them the existence of the will, and his denial of its existence when applied to by Mrs. Goodrum for information thereof relieved her from the imputation of negligence in failing to prosecute further inquiry on the information communicated to her by Mrs. Sims, one of the subscribing witnesses to the will.

By accepting the custody of the will he became trustee in an express trust as to it, by his dealing with the estate he became trustee as to it by construction.

The existence of the will was not discovered until after the death of Charles B. Clarke, and the claim was duly probated against his estate, as required by the statute, within one year after the notice to creditors of his estate; this suspended the operation of the statute of limitations and the claim is not barred.

It is true that but for the will the whole estate of Gibson Clarke would have passed to Mrs. Boyce, the mother of appellees, but they claim under the will and not as distributees of an intestate, and if as strangers in blood to Gibson Clarke their right as legatees would not be barred, it cannot be barred because of the fact that but for the will they would have taken as distributees, and as such would

be barred by limitation. They do not set up any claim as distrib-
utees, and it cannot be set up for them by the executor *de son tort*
for the purpose of defeating the claim, which they still have the
right to assert.

*The decree is affirmed.*

*J. D. Vertner* and *W. P. & J. B. Harris* filed suggestions of
error and the following argument in support thereof :

The bill does not seek to charge Charles B. Clarke as executor *de
son tort*. For that purpose it should have charged him as executor.
If so charged he would have been acquitted on a plea *ne unques, etc.*,
because the mere non action of a debtor does not amount to a deal-
ing with the estate, which would constitute him an intermeddler.
He does not come within the terms of the statute. He has not
"alienated or embezzled" nor appropriated. He has refused to
pay and concealed the fact of indebtedness, as is alleged. No case
can be found, I submit, in which the conduct of the debtor such as
that disclosed here fixed that character upon him. The will was
deposited with him. He did no act of an executor, no positive
act of any kind. The withholding of a will is not such act.
There must be a dealing *with property*, and refusing to pay or con-
cealing an indebtedness is not such act. It is the doing of acts
which an executor alone could do or is authorized to do with the
estate that subjects the person to be charged as executor. The
conduct here charged is not of that character. It is, indeed, the
very opposite of it. The title to a share of the note is set up under
the will, but it is to collect the note that the suit is brought. If
the parties had taken out letters, they must have sued on the
note, and the complainant comes in to stand in the shoes of the
legal representatives. We beg to be permitted to say that there
was no trust here as respects property. The bill is not predicated
on a trust. If it had been filed by alleged beneficiaries under a trust
it would have failed. There was no transfer of title to any fund or
property by Gibson Clarke to his uncle in his lifetime. No right
accrued to complainant's ancestress under the alleged parol trust
because Gibson Clarke asserted the rights of a creditor and collected

part of the note after the time of the alleged deposit of the note. Can there be such thing as a trust where no title passes and no right accrues which can be enforced? The idea of trust must therefore be dismissed. If there was a trust, there was nothing on which the will took effect. Being a will, there was no trust arising after Gibson Clarke's death. It is perfectly obvious that if suit had been brought at any time by an authorized person on the note, Charles B. Clarke could only have claimed to have the amount reduced. The will was in his favor, not in favor of the heirs. It is plain that Charles B. Clarke took nothing after Gibson Clarke's death. He collected no debt, he alienated no property, he *embezzled* nothing. Where there is no visible estate and nothing but a debt due, the conduct of the debtor in evading or concealing the debt or in denying indebtedness, the character of executor *de son tort* cannot be imputed. It is imputable only in order to charge for a tort, and refusal to pay is not such tort. If a party "intermeddles with the goods of the deceased, or does any act characteristic of the office of executor, he thereby makes himself what is called in law an executor of his own wrong." 1 Hill Exrs. 224–5. We have not been able to find a case in which a debtor for such conduct has been held chargeable as executor. Our examination has extended to the text and notes to Williams on Executors.

CHALMERS, J., delivering the opinion of the court on the suggestions of error.

Counsel are correct in supposing that no inaction by a creditor, though prolonged until the statute of limitation bars the demand, will ever constitute such creditor an executor *de son tort*, and equally so in saying that the mere concealment of a will, though fraudulent, will not have that effect. It is the concurrence of the two facts here alleged and proved that constitutes the debtor an executor in his own wrong. The claim against himself was the entire estate. His note and the will disposing of it were alike deposited with him for safekeeping. He failed to produce either. He denied to those interested that there was any such note, and he

failed during his entire life, though many years lapsed, to produce or tell of the will. Both note and will were found and proved after his death. In the meantime, the note had become barred by lapse of time.

We hold under these circumstances that he is to be treated as executor *de son tort* of the estate, and to be held on the note as if he had collected it while it was still collectable, and that we will not allow him to say that in fact he did not collect it. He collected it when it became barred in his hands. If it be true, as urged by counsel, that never before has a man under these circumstances been held to be an executor *de son tort*, the obvious reply is that no case can be found where the facts were the same.

Interest at the contract rate, ten per cent., however, is only to be collected while such note was living and collectable. The Chancellor allowed it up to the decree.

Interest at ten per cent. must be computed only up to the date when by law the note itself ceased to be alive by the statute of limitation, and after that time at six. The contract rate, of course, only existed while the contract lasted.

The question of interest was not heretofore before us.

*Reversed and decree here.*